# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand twenty-two.

**PRESENT:**
    **BARRINGTON D. PARKER,**
    **MICHAEL H. PARK,**
    **BETH ROBINSON,**
        *Circuit Judges.*

---

**STEVEN B. THOMAS,**

    *Plaintiff-Appellee*,

    v.                                                                                   21-1400

**JOHN WELLENREUTHER,**

    *Defendant-Appellant.*[*]

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | ROBERT F. VAN DER WAAG (Felicia Gross, *on the brief*), Deputy County Attorney, *for* Jessica Molinares Kalpakis, Acting Nassau County Attorney, Nassau County Attorney's Office, Mineola, NY. |
| **FOR PLAINTIFF-APPELLEE:** | NINA KOVALENKO (Eric Alan Stone, Jessica Fuhrman, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY. |

---

[*] The Clerk is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Shields, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Steven B. Thomas brought this suit under 42 U.S.C. § 1983 against Nassau County Police Officer John Wellenreuther, alleging that Wellenreuther violated Thomas's Fourth Amendment rights by using excessive force. After a bench trial, the magistrate judge made the following findings of fact: At 7:00 A.M. on October 5, 2011, after completing a 12-hour shift, Officer Wellenreuther went in plain clothes to the Liberty Gas Mart in Elmont, New York. Although he had a partially obstructed view, he observed a man inside the onsite convenience store holding up his arm at a right angle, pointed at the attendant. Wellenreuther then saw the man—later identified as Steven Thomas—walk quickly away from the convenience store with money hanging from his pocket. As Thomas was departing, the attendant, excited but uninjured, left the store, pointed at Thomas, and shouted that he had been robbed. Wellenreuther, though off-duty, was permissibly carrying his service revolver at the time.

Wellenreuther "testified that he yelled for Thomas to stop, and that he identified himself as a police officer." Findings of Fact ¶ 32.[1] He also testified that Thomas "spun around" toward him, putting Wellenreuther in fear for his life. The magistrate judge determined that Wellenreuther "could reasonably have believed that Thomas had a real gun," *id.* ¶ 39, even though in fact Thomas had been carrying a BB gun. Wellenreuther then fired a single shot (the "First Gunshot") at

---

[1] Thomas testified that he never heard Wellenreuther identify himself as a police officer, and the magistrate judge found Thomas's recollection credible. But Thomas concedes on appeal that the magistrate judge did not make any definite finding of fact as to whether Wellenreuther might have said he was a police officer without Thomas hearing him.

2

Thomas, which missed.

After the First Gunshot, Thomas began to run away from Wellenreuther again. Thomas pulled the BB gun out of his pocket and threw it away from him. He testified that the gun was "weighing him down as he attempted to run from" Wellenreuther. *Id.* ¶ 53. Wellenreuther saw Thomas throw the BB gun—which Wellenreuther believed to be a real gun—away from him. Wellenreuther heard the gun make contact with a parked car and concluded that Thomas had discarded it. The magistrate judge reasoned that, at this point, Wellenreuther "knew that whatever weapon Thomas had was thrown away from Thomas and was not in Thomas's possession," *id.* ¶ 61, and thus "knew that Thomas was unarmed," *id.* ¶ 62. Thomas continued to run toward a private driveway and jumped over the driveway fence. Wellenreuther testified that he again identified himself as a police officer and "saw Thomas reach into his waistband" after spinning around toward Wellenreuther. *Id.* ¶ 75. Wellenreuther then fired a second shot (the "Second Gunshot"), which hit the back of Thomas's neck. Thomas was about 20 feet away. The magistrate judge determined that Thomas was running away from Wellenreuther—not facing him—at the time the shot was fired given the point of contact. In particular, she found that "generally, Wellenreuther was a credible witness" but determined that he could not "have reasonably believed that Thomas was reaching for or facing him with a gun at the time when Wellenreuther fired the Second Gunshot." *Id.* ¶ 86.

On these facts, the magistrate judge determined that the First Gunshot did not constitute excessive use of force under the Fourth Amendment. She concluded that Wellenreuther's actions were objectively reasonable because a reasonable officer could have believed that Thomas was fleeing from the commission of an armed robbery and was turning toward Wellenreuther to use deadly force. But as to the Second Gunshot, the magistrate judge determined that Wellenreuther

violated the Fourth Amendment.

The district court entered judgment for Thomas in the amount of $475,000. Damages were based on Thomas's testimony at trial: He testified to feeling a sharp burning pain upon being shot, after which he was left bleeding and taken by ambulance to the hospital. He also testified to a dislocated shoulder and treatment complications during his five-day hospital visit due to hemophilia. He further testified to continuing neck stiffness and various forms of psychological distress.

Wellenreuther appealed. After a bench trial, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

First, we conclude that the findings of fact Wellenreuther challenges on appeal were not clearly erroneous. Wellenreuther principally disputes the magistrate judge's rejection of his account of Thomas's actions before the Second Gunshot. At the outset, Wellenreuther admits that Thomas must have been facing away from Wellenreuther when the shot was fired because the bullet struck the back of Thomas's neck. On appeal, Wellenreuther suggests instead that the magistrate judge should have concluded that the order of events was as follows: (1) Thomas, though no longer with a weapon, spun around at Wellenreuther and reached into his waistband; (2) Wellenreuther, fearing for his safety, decided to fire the Second Gunshot; (3) Thomas then turned away again and began to run; and (4) Wellenreuther pulled the trigger, firing the Second Gunshot. But we discern no clear error in the magistrate judge's decision to credit Thomas's account—that he was continuing to run away—over Wellenreuther's theory. In addition to the fact that Thomas was shot in the back of the neck, the magistrate judge was entitled to rely on the

fact that Thomas had already abandoned his weapon, as well as Wellenreuther's own repeated testimony that he believed Thomas was unarmed by the time of the Second Gunshot. Wellenreuther also testified that Thomas was 20 feet away from Wellenreuther when the shot was fired. In short, we do not think that the magistrate judge's determination was clear error.[2]

Second, we reject Wellenreuther's argument that we should reverse because a reasonable officer in his position would fear for his own safety. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.").[3] Though couched as a separate legal argument, Wellenreuther's analysis assumes facts contrary to the magistrate judge's findings—namely, that Thomas suddenly spun around toward him before the Second Gunshot, and that Wellenreuther believed Thomas might have been armed. Wellenreuther offers no substantial arguments why a reasonable officer in his position would fear for his own safety if the magistrate judge's findings were correct.

Third, we agree with the magistrate judge that Wellenreuther waived any defense of qualified immunity. In *Blissett v. Coughlin*, 66 F.3d 531 (2d Cir. 1995), we held that the defendants waived their qualified immunity defense because they raised only a general immunity

---

[2] Wellenreuther also notes that (1) Thomas testified remotely during the bench trial, and (2) the magistrate judge otherwise found Wellenreuther credible. But he identifies no rule disallowing triers of fact from crediting remote testimony, or from finding some parts of a witness's testimony (but not all parts) supportable by the full record. Further, Wellenreuther asserts that the magistrate judge should have determined that he identified himself as a police officer. But as Thomas concedes, the magistrate judge did not decide that issue either way, and Wellenreuther does not explain how such a fact would change the legal analysis ultimately applied here.

[3] Wellenreuther occasionally suggests that the Second Gunshot could have been justified by reasonable fear for the safety of others. We express no view on that question because below, Wellenreuther argued only that he feared for his own safety when firing the Second Gunshot. *See Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (noting that generally "an appellate court will not consider an issue raised for the first time on appeal" (citation omitted)).

5

defense in their answer, did not move for summary judgment based on qualified immunity, and did not mention qualified immunity in their pretrial memorandum of law. *Id.* at 538. Wellenreuther pleaded qualified immunity in his answer to Thomas's first complaint, but he did not answer the amended complaint. He did not move for summary judgment on qualified immunity grounds nor did he mention qualified immunity in his proposed jury instructions when the case was originally set for jury trial. Under these circumstances, Wellenreuther's litigation strategy evinced an "intentional decision not to assert" qualified immunity, so the magistrate judge correctly concluded that the defense was waived. *United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015).

Fourth, the magistrate judge did not abuse her discretion by excluding certain evidence. "We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Delva*, 858 F.3d 135, 156 (2d Cir. 2017) (citation omitted). Wellenreuther sought to admit written statements from eyewitnesses attesting to Wellenreuther's command "don't move" and to Thomas's threatening actions prior to the First Gunshot. App'x at 61. The magistrate judge correctly concluded that these written accounts were hearsay because they were out-of-court statements offered for the truth of the matter asserted therein. *See* Fed. R. Evid. 801. On appeal, Wellenreuther argues that the statements should nevertheless have been admitted under the residual exception, Rule 807.[4] But he does not explain why that "very rarely" applied rule is apposite here. *Parsons v. Honeywell, Inc.*, 929 F.2d 901,

---

[4] Wellenreuther also states without elaboration that he "established that the witnesses were unavailable, and therefore the statements were not hearsay." Appellant's Br. at 33. But under Rule 804, mere unavailability of the declarant, standing alone, is not enough to render a hearsay statement admissible. Fed. R. Evid. 804.

6

907 (2d Cir. 1991) (citation omitted). In particular, Wellenreuther never explains why these written statements would have been "more probative on the point[s] for which [they were] offered than any other evidence that" Wellenreuther could have "obtain[ed] through reasonable efforts." Fed. R. Evid. 807(a)(2).[5]

Finally, we decline to disturb the award of $400,000 in damages for pain and suffering and $75,000 for emotional distress. Our limited review extends only to damages awards that "shock the judicial conscience and constitute a denial of justice." *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (citation omitted). Wellenreuther provides no persuasive reasons for us to conclude that the damages award here was so extreme.

We have considered the remainder of Wellenreuther's arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Wellenreuther also challenges the magistrate judge's refusal to allow him to cross-examine Thomas on credibility grounds based on Thomas's conviction for the Liberty Gas Mart robbery. *See People v. Thomas*, 10 N.Y.S.3d 461 (2d Dep't 2015). As Wellenreuther notes, under Federal Rule of Evidence 609(a)(1), felony convictions are generally admissible to impeach a witness's character for truthfulness, subject to Rule 403. But Wellenreuther does not challenge any failure to *admit* evidence of the robbery conviction; as he acknowledges, the magistrate judge was aware of the conviction during and after the bench trial. Instead, he argues that he should have been allowed to cross-examine Thomas about the conviction so that the court could observe Thomas's responses. We do not believe that the magistrate judge abused her discretion in determining that any such cross-examination was unwarranted under Rule 403. *See* Fed. R. Evid. 403.